## L. P. PALMER v. THE STATE.

### No. 3259.    Decided October 25, 1905.

**1.—Assault to Murder—Evidence—Hearsay—Opinion of Witness—Res Gestae —Bill of Exceptions.**

On trial for assault with intent to murder, the State introduced in evidence the statement of a party who was in the house at the time of the shooting by defendant, but did not see him, to the effect that it was defendant who did the shooting addressing herself to another person in said house.  No motion

was made at the time to have the testimony excluded and therefore the question as to whether it is res gestæ can not be considered, although had the question been properly raised it is intimated that this was not res gestæ.

### 2.—Same—Harmless Error.

Where upon trial for assault to murder, the matter objected to was favorable to appellant and did not injure his rights, there was no error.

### 3.—Same—Aggravated Assault—Malice—Charge of Court.

Where upon trial for assault to murder the evidence showed that defendant entertained malice against the wife of prosecutor, and made a threat against her; went to the house evidently ascertaining where the parties were sitting. they having a light in the room, poked his gun into the room and fired upon them at close range with squirrel shot; wounding the persons in said house, and firing therein four or five times, the court did not err in not charging on the law of aggravated assault.

### 4.—Same—Alibi—Circumstantial Evidence.

The evidence being positive against defendant as the party doing the shooting there was no necessity to charge on circumstantial evidence, and the charge on alibi was sufficient.

### 5.—Same—Age of Witness.

Where the testimony showed that the witness was over 9 years of age at the time she testified, there was no occasion to submit a charge as to the age of witness.

Appeal from the District Court of Lamar. Tried below before Hon. Ben H. Denton.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The following statement taken from the brief of the Assistant Attorney-General is substantially correct: The alleged assault was committed upon one A. L. Johnson. Johnson and appellant were neighbors. The motive suggested for the attempted assassination was that appellant was mad at Johnson and his wife, because Johnson's wife had filed a complaint against appellant for using abusive language to her. The facts briefly are, that on the day before the alleged offense was committed, appellant, Johnson, and Johnson's wife were also in the city of Paris—the parties living in the country some distance from Paris. A mutual friend, Hooks, approached Johnson's wife, for the purpose of persuading her not to further prosecute appellant for the use of abusive language to her. Appellant was standing near when this conversation occurred. Hooks remarked to appellant, "I can't do anything." Evidently meaning that he could not persuade her to abandon the prosecution. To which appellant replied to Hooks, "Let her alone. Don't talk to her any more. By God, I will get my revenge to-night." This was the evening of the night the alleged assault occurred.

Sims testified for the State that on this night, just about dusk, he visited the house of Johnson, prosecutor; that while he was engaged in the conversation in the house with Johnson and his wife, some one fired several shots into the house, by shooting under the door thereof, which was closed—there being a hole in the bottom of the door. One of said shots, the first one to be fired, wounded prosecutor. Another, wounded witness Sims. No one in the house saw appellant, or any

one else during the shooting. Essie Hill, the 9-year-old stepdaughter of prosecutor, testified that she was at the cow lot, playing with her little brothers and sisters; that she saw appellant come through the lot with a gun in his hand, going in the direction of the residence, and immediately she heard five or six shots; that she proceeded to the house, saw appellant as he was taking some shells from his gun, or was endeavoring to remove the shells, or something of that kind. Other witnesses testify that they examined the tracks, which were found in the yard and trailed them in the direction of appellant's home.

Appellant's defense was an alibi.

No brief of appellant has reached the hands of the Reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at a term of two years confinement in the State penitentiary; hence this appeal.

Prosecutor and wife Ida Johnson, lived a few hundred yards from where appellant lived. A feud existed between them. About nightfall on the occasion in question some one came to the house of prosecutor and fired into the room (the house containing only one room) through a "cat-hole" (as the witnesses call it) in the door, wounding the prosecutor and one Sims, who happended to be visiting there at the time. The parties in the house did not see who fired the shots, but immediately after the first shot was fired, Sims says, "What is that? Have you got any cannons here to fire?" Witness Ida Johnson said, "No, sir, that is Lige Palmer shooting in here." According to the bill of exceptions the question and answer thereto was objected to because the same was hearsay, and a mere conclusion and opinion of the witness as to who it was doing the shooting, because witness did not see or know at the time who it was doing the shooting; and that said testimony was calculated to prejudice appellant with the jury. However, the court, in explaining the bill of exceptions states "no motion was made to have the testimony excluded, and the only objection made by defendant was in these words, 'we object to that. Our exception goes to the further proposition that they have not connected defendant with the transaction.'" Inasmuch as the explanation of the court must control the bill of exceptions, it must be considered that this was the only objection urged. The objection that the testimony was hearsay and not res gestæ, does not appear to have been raised. If it had been properly raised an interesting question would be presented. Res gestæ is the transaction voicing itself; that is what was said or done by the parties to the transaction at the time of its happening. Ida Johnson, as well as her-husband were evidently parties to the transaction, and appellant entertained malice against both. Here, however, the declarant could not know that it was appellant doing

the shooting, and her exclamation was only her surmise or opinion based upon what had happened previous to this transaction. We are of opinion, had the question been properly raised, that this was not the transaction voicing itself.

Our holding in regard to this bill of exceptions is applicable to appellant's bill number 2, with reference to the testimony of Harrison Sims, as to a similar expression of Johnson (prosecutor) made at the same time and under the same circumstances.

Appellant placed his witness, Sarah Palmer, on the stand, and proved that before the firing at Johnson's house, her husband came home in a drunken condition and laid down on the floor, and was in the house during the whole time that the shooting was going on, over at the Johnson house. On cross-examination, the State asked this witness a number of questions, which appellant claims was not germane to her examination in chief. It may be that some of the questions asked were not, but those were upon immaterial matters and the answers of the witness were favorable to appellant. There was no error to the injury of appellant by this procedure.

Appellant objected to the charge of the court, because of the failure of the charge to instruct the jury on aggravated assault. He says this should have been done, because appellant had no malice against the alleged injured party, Johnson, and had no specific intent to injure him, much less to kill him. The record unquestionably shows that appellant entertained malice against the wife of prosecutor Johnson, and made a threat against her. He went to the house and evidently ascertained where the parties were sitting, as they had a light in the room, poked his gun into the room, fired upon them at close range; notwithstanding the proof shows that the shot were squirrel shot, evidently the weapon as used was capable of inflicting death or serious bodily injury, which might end in death. Both Johnson and Sims were wounded by the first fire. Johnson's heel was shot off, and he testifies that the round of the chair on which he was sitting was shot in two, and Sims was shot in the leg. Although the parties in the house were very much terrified and insisted that appellant desist from firing any more, he continued, firing into the house four or five more shots, manifesting his purpose. Under the circumstances it does not occur to us that, even if it be conceded he had no special malice towards Johnson —, but only against his wife, it could not be said he did not have the specific intent to kill him. As presented the case in this respect would be very much like one firing into a crowd indiscriminately. Malice would be presumed in such a case.

Appellant's criticism of the court's charge on alibi is not tenable. Neither was the court required to charge on circumstantial evidence, as the testimony of Essie Hill developed a case of positive evidence against appellant as the party doing the shooting.

There was no occasion for the court to charge as to the age of

Essie Hill. The testimony showed that she was over 9 years of age at the time she testified.

There being no error in the record, the judgment is affirmed.

*Affirmed.*